## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**VENIAS JORDAN, JR.,**
      Plaintiff**,**

Case No. 20-cv-
**Hon.**

v.

**VERYNDA STROUGHTER,** in her individual and official capacities
as Principal of Detroit Renaissance High School**,**
**DR. NIKOLAI VITTI,** in his individual and official capacities as
Superintendent of the Detroit Public Schools Community District**,**
**IRANETTA, WRIGHT,** in her individual and official capacities as the
Deputy Superintendent of the Detroit Public Schools Community
District,
**DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT,** a general
powers school district**, and**
**MARK WHITE,** an individual,
      Defendants.
_____/

**ANDREW A. PATERSON (P18690)**
Attorney for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com
_____/

## COMPLAINT AND JURY DEMAND

    **NOW COMES** Plaintiff, VENIAS JORDAN, JR., by and through

his attorney, ANDREW A. PATERSON, and for his Complaint and Jury

Demand ("Complaint"), states as follows:

## I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983; 28
   U.S.C. §§ 1331, 1337, 1343, and 1367; and, the Declaratory
   Judgment Act, 28 U.S.C. § 2201, *et. seq.*

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42
   U.S.C. 1983; 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1367.

3. This Court also has jurisdiction to render and issue a declaratory
   judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §
   2201, *et. seq.*

4. Venue is proper in the Eastern District of Michigan under 28
   U.S.C. § 1391(b)(1). Under 28 U.S.C. § 1391(b)(1), venue is proper
   in "a judicial district in which any defendant resides, if all
   defendants are residents of the State in which the district is
   located."   Upon information and belief, all of the named
   Defendants are residents of the State of Michigan or have a place
   of business in the State of Michigan, and at least one of the
   Defendants reside in the Eastern District of Michigan. Therefore,

venue is proper within the Eastern District of Michigan under 28 U.S.C. § 1391(b)(1).[1]

5. All events giving rise to the causes of action pleaded and alleged herein occurred in the Eastern District of Michigan.

## III.   **PARTIES**

6. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

7. Plaintiff, Venias Jordan Jr. ("**Plaintiff Jordan**" or "**Plaintiff**"), is an employee of the Defendant Detroit Public Schools Community District and is a member of the Detroit Federation of Teachers union.

8. Defendant, Verynda Strougther ("**Defendant Strougther**"), is the duly appointed head principal of Detroit Renaissance High

---

[1] Under 28 U.S.C. § 1391(b)(1) venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Furthermore, under 28 U.S.C. § 1391(c)(2), a corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction."  The determination of the proper venue for a civil action in federal court is "generally governed by 28 U.S.C. 1391." *Atlantic Marine Const. Co. v U.S. District. Court for W.Dist. of Texas*, 571 U.S. 49, 55 (2013). "[T]he court must determine whether the case falls within one of the three categories set out in 1391(b).  If it does, venue is proper[.]" *Id*. at 55.

School and is an administrative employee of the Defendant Detroit Public Schools Community District.

9. Defendant, Dr. Nikolai Vitti ("**Defendant Vitti**"), is the duly appointed superintendent of schools for the general powers school district Defendant Detroit Public Schools Community District.

10. Defendant, Detroit Public Schools Community District ("**Defendant Community School District**" or "**Defendant DPSCD**"), pursuant to Mich. Comp. Laws § 380.381 of the Revised School Code, is a general powers school district that is governed by a 7-member school board, whose members are elected at large.

11. Defendant, Iranetta Wright ("**Defendant Wright**"), is the duly appointed deputy superintendent of schools for the general powers school district Defendant Detroit Public Schools Community District.

12. Defendant, Mark White ("**Defendant White**") is a resident of Ypsilanti, Michigan that conspired with the Defendants to violate Plaintiff's constitutional rights.

13.     An actual controversy exists between the Plaintiff and the named Defendants.

## GENERAL ALLEGATIONS AND STATEMENT OF FACTS

14.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

15.     In June 2013, former Renaissance High School Principal Anita Williams, in accordance with the Defendant Community District's established policy and practice, "verbally/orally" authorized the hiring of Plaintiff Jordan to serve in the position of head boys basketball coach at Detroit Renaissance High School.

16.     Plaintiff Jordan's engagement to serve as the head boys basketball coach at Renaissance H.S. was authorized through an "oral/verbal" contract with former Renaissance H.S. Principal Anita Williams.

17.     As the head boys' basketball coach, Plaintiff Jordan received approx. $4,006 a year in compensation from the Defendant Community District and also received a I.D./badge issued by the Defendant Community District.

18.     Since 2013, former Renaissance High School Principal Anita Williams "orally" renewed Plaintiff Jordan's "oral" contract each year.

19.     Plaintiff Jordan's "oral" contracts with former Renaissance High School Principal Anita Williams could not be terminated without "just" cause.

20.     Since being hired in as the head basketball coach at Renaissance H.S., Plaintiff Jordan was never required to sign a "written" contract.  All of Plaintiff Jordan's contracts to serve as the head boys basketball coach have been "verbal/oral" contracts, which could **not** be terminated without "just" cause.

21.     It has been the policy and practice of the Defendant Community District to allow the building principals to hire athletic coaches via "oral" contracts that are renewable each year.

22.     Currently**, ALL** of the Defendant Community District's athletic coaches have "oral" contracts that are authorized by their respective building principals.

23.     In June 2018, prior to her resigning to take a new administrative position out-of-state, former Renaissance H.S.

Principal Anita Williams, in accordance with the Defendant Community District's established policy and practice, "verbally/orally" authorized Plaintiff Jordan to continue to serve in the position of head boys basketball coach for the 2018-2019 school year.

24.     Acting upon the "verbal/oral" authorization given by former Renaissance H.S. Principal Anita Williams, throughout the summer months of June/July 2018, Plaintiff Jordan, as the head boys basketball coach, organized summer practices, workouts, summer league games, as well as organized nearly 8 out-of-town trips for the basketball team to attend various college and university team camps.

25.     In mid-July 2018, Plaintiff Jordan was advised that former Principal Anita Williams was resigning to take an assistant superintendent's position in Birmingham, Alabama. Anita Williams' resignation as Principal of Renaissance High School **was effective August 20, 2018**.

26.     After former Principal Anita Williams filed her formal letter of resignation on July 18, 2018, assistant principal Roy Harris was

appointed Interim Principal of Renaissance H.S effective August 20, 2018.

27.     Despite the change, Plaintiff Jordan continued to serve in the capacity as head boys basketball coach per the authorization given by former Principal Anita Williams.

28.     In mid-August 2018, Interim Principal Roy Harris convened a meeting in his office with Plaintiff Jordan to discuss Plaintiff Jordan's future as the head boys basketball coach.

29.     During the mid-August 2018 meeting, Interim Principal Roy Harris "verbally" told Plaintiff Jordan that he was retaining Plaintiff Jordan as the head boys basketball coach for the 2018-2019 school year and that Plaintiff Jordan was authorized to continue to serve in the capacity as head boys basketball coach and make the necessary personnel decisions for his basketball staff for the upcoming season.

30.     During this meeting, Plaintiff Jordan "verbally" indicated that it was his pleasure to continue in the capacity as the head boys basketball coach and that he would continue to do his best to

make Interim Principal Roy Harris and the Defendant

Community School District proud.

31.     While acting in his official capacity as the head boys'

basketball coach, Plaintiff Jordan sought and successfully received

Interim Principal Roy Harris' authorization and permission to

hire a strength and conditioning coach for the boys basketball

team.

32.     Additionally, after the mid-August 2018 meeting with

Interim Principal Roy Harris, Plaintiff Jordan continued his

duties as the head boys' basketball coach, which included

scheduling workouts and open gym sessions for the players.

33.     Interim Principal Roy Harris served in the official capacity

as Interim Principal of Renaissance H.S. from mid-July 2018 until

September 4, 2018, which is when Defendant Strougther began

serving as the new principal of Renaissance H.S.

34.     After Defendant Strougther was appointed principal,

Interim Principal Roy Harris returned to his previous position as

assistant principal.

35.     Upon being appointed the principal of Renaissance H.S., Defendant Strougter never met with Plaintiff Jordan and/or his coaching staff to discuss the boys' basketball team.

36.     It was not until September 10, 2018 when Plaintiff Jordan was informed by the Athletic Director, Leon McKissic, that Defendant Strougter wanted to meet with Plaintiff Jordan on September 11, 2018.

37.     At Defendant Strougter's request, on September 11, 2018, Plaintiff Jordan met with Defendant Strougter.  Present at the September 11, 2018 meeting were Athletic Director Leon McKissic and Assistant Principal Louis Grady.

38.     During the September 11, 2018 meeting, Defendant Strougter, was visibly unpleasant towards Plaintiff Jordan.

39.     In a very aggressive tone and disrespectful manner, during the September 11, 2018 meeting, Defendant Strougter advised Plaintiff Jordan that she was going in another direction for the boys basketball program because she had heard some "negative things" about the program and Plaintiff Jordan, and that Plaintiff Jordan would no longer be the head boys basketball coach.

Defendant Stroughter further advised Plaintiff Jordan that he would be permitted to interview.

40.    Upon hearing Defendant Stroughter's decision, Plaintiff Jordan immediately proceeded to ask Defendant Stroughter why she was removing Plaintiff Jordan from the head coaching position and further asked Defendant Stroughter what "negative" things Defendant Stroughter had heard about the boys' basketball program.

41.    In a very disrespectful and mean manner, Defendant Stroughter refused to answer and/or address Plaintiff Jordan's questions and the concluded the meeting, which lasted less than 10 minutes.

42.    Immediately upon leaving the September 11, 2018 meeting with Defendant Stroughter, Plaintiff Jordan notified his coaching staff, players and their parents of what Plaintiff Jordan was just told by Defendant Stroughter.

43.    Upon receiving the news, the players and their parents were furious.

44. After the September 11, 2018 meeting, Plaintiff Jordan was permitted to continue his duties as the head boys' basketball coach. Plaintiff Jordan continued to schedule and supervise open gyms and workouts for the players.

45. Plaintiff Jordan was not removed from the position as head boys' basketball coach of Renaissance High School until September 25, 2018.

46. Within a few days after the September 11, 2018 meeting, rumors began to circulate in the community and school system that Defendant Stroughter was romantically and/or sexually involved with former Renaissance H.S. coach Defendant Mark White, and that it was Defendant Stroughter's intent all along, upon her appointment, to make Defendant Mark White the head boys' basketball coach.

47. A few days later, on September 19th, 2018, the players' parents organized a parent meeting at Renaissance H.S. and requested Defendant Stroughter to attend.

48. During the September 19th, 2018 parent meeting, the players, their parents, and alumnus expressed their displeasures

with the Defendant Stroughter's decision to remove and ultimately terminate Plaintiff Jordan from his position as head boys' basketball coach.

49.     Defendant Stroughter arrogantly ignored the players' and parents' concerns and expressed that she was moving forward with her decision to replace Plaintiff Jordan, and further reiterated that Plaintiff Jordan was free to apply and interview for the position.

50.     Despite the obvious animus and ill-will Defendant Stroughter had against him, Plaintiff Jordan submitted his resume and requested to be interviewed for his position as head boys' basketball coach.

51.     Defendant Stroughter provided Plaintiff Jordan with the date of September 24, 2018 for his formal interview.

52.     However, in the days leading up to Plaintiff Jordan's September 24, 2018 interview, Plaintiff Jordan was contacted via cell phone by Defendant Mark White, who informed Plaintiff Jordan that he planned on interviewing with Defendant Stroughter for the head boys' basketball job on Monday,

September 24, 2018, and Defendant Mark White further advised Plaintiff Jordan that Defendant Stroughter had previously offered him the job in their previous meetings.

53.    During these phone conversations, Defendant Mark White also advised Plaintiff Jordan that Defendant Stroughter had told him in their previous meetings that Defendant Stroughter "strongly disliked" Plaintiff Jordan.

54.    In fact, on Monday, September 24, 2018, prior to formally interviewing with Defendant Stroughter, Defendant Mark White met with his players at River Rouge High School and informed them and the staff that he was leaving River Rouge to take the head boys' basketball job at Renaissance H.S.

55.    Defendant Mark White made this announcement **PRIOR** Plaintiff Jordan's formal interview with Defendant Stroughter, which was also scheduled for the evening of Monday, September 24, 2018.

56.    Upon receiving this information, Plaintiff Jordan immediately retained Attorney Andrew Paterson to represent him in this matter.

57.     Upon being retained, on Plaintiff Jordan's behalf, Attorney
Paterson immediately sent Defendants Stroughter and Vitti an
email objecting to the unjust and unfair interviewing process and
unlawful termination of Plaintiff Jordan.

58.     Although neither Defendants Stroughter or Vitti directly
responded to Attorney Paterson's September 24, 2018
communication, in a subsequent email sent to the DPSCD Board
of Education members and executive staff, Defendant Vitti
expressed his "dislike" of Plaintiff Jordan's choice for an attorney.

59.     Despite the apparent animus and ill-will Defendant
Stroughter physically and verbally expressed, Plaintiff Jordan
went to his scheduled interview on Monday, September 24, 2018.

60.     Before the interview commenced, Plaintiff Jordan provided
Defendant Stroughter with a copy of Attorney Paterson's
September 24, 2018 communication.

61.     Throughout Plaintiff Jordan's September 24, 2018 interview,
Defendant Stroughter seemed disinterested in Plaintiff Jordan's
responses to the interview questions that were posed by members
of the interview committee.

62.     After Plaintiff Jordan's interview concluded, Defendant Strougher interviewed Defendant Mark White for the head boys' basketball coaching position.

63.     Upon leaving the interview, Plaintiff Jordan immediately contacted his attorney and members of the press to inform them of the unlawful and unethical actions of Defendant Strougher.

64.     Defendant Strougher officially terminated Plaintiff Jordan as the head boys' basketball coach on September 25, 2018.

65.     The next day, on September 25, 2018, counsel for Plaintiff Jordan sent a communication to Wayne County Sheriff Benny Napoleon, Wayne County Prosecutor Kym Worthy, River Rouge Superintendent of Schools Dr. Derrick Coleman, Defendants Strougher and Vitti, as well as members of the press, requesting a criminal investigation into the background of Defendant Mark White based upon allegations that have surfaced regarding his alleged sexual relationships with young female high school students.

66.     Detroit News' high school sports reporter Dave Goricki then followed up and posted an in-depth story detailing the unlawful

and unethical actions of Defendant Strougher, which included

Plaintiff Jordan's critical comments about Defendant Strougher.

67.     The Defendant Community District, through its

spokesperson, then issued a statement to the media, which

implied that Plaintiff Jordan would **not** be considered for the

position, in spite of Defendant Strougher's chosen and hand-

picked candidate, Defendant Mark White, had withdrawn from

consideration.

68.     Notably, in the Defendants Dr. Vitti, Strougher, DPSCD

and Wright's official statement issued through their spokesperson,

Crystal Wilson, the DPSCD Defendants attempted to defend

Defendant Mark White, who is alleged to be Defendant Strougher

romantic partner.

69.     Particularly, Defendants Dr. Vitti, Strougher, DPSCD and

Wright's official statement falsely stated that Defendant Mark

White withdrew as a result of being "bullied" and "harassed", as to

suggest Plaintiff Jordan participated in such conduct.

70.     The Defendants Dr. Vitti, Strougher, DPSCD and Wright's

official statement official statement further illustrated and

validated what has been rumored as the romantic and/or sexual relationship between Defendants Strougher and Mark White.

71.　　The allegations set forth in Attorney Paterson's September 25, 2018 communication to Wayne County Sheriff Benny Napoleon and the Wayne County Prosecutor about Defendant Mark White's alleged sexual encounters with young female students at River Rouge and Renaissance High Schools are well-known.  Thus, contrary to the Defendants Dr. Vitti, Strougher, DPSCD and Wright's official statement, said allegations were **not** "baseless attacks."

72.　　The Defendants Dr. Vitti, Strougher, DPSCD and Wright's official statement September 25, 2018 press release/statement further illustrated the Defendants Dr. Vitti, Strougher, DPSCD and Wright's official statement animus and ill will towards Plaintiff Jordan and his legal counsel.

73.　　The Defendants Dr. Vitti, Strougher, DPSCD and Wright's September 25, 2018 press release/statement also illustrated the bias Defendants Dr. Vitti, Strougher, DPSCD and Wright's official statement have towards Plaintiff Jordan.

74.     In September 2018, Plaintiff Jordan filed suit in the Wayne County Circuit Court against Defendants Dr. Vitti, Stroughter, and DPSCD.

75.     In August 2019, Plaintiff Jordan and Defendants Dr. Vitti, Stroughter and DPSCD reached a settlement agreement in the Wayne County Circuit Court case.

76.     Due to the confidentiality clause contained in the settlement agreement, Plaintiff Jordan or his counsel cannot state publicly the terms of the settlement agreement.  A copy of the settlement agreement will be filed under seal with permission from the Court.

## CAUSES OF ACTION

## COUNT I

**Defendants Dr. Vitti, Stroughter, Wright Retaliated Against Plaintiff Jordan For Exercising His First Amendment Rights By Refusing To Consider His Resume and Application for The Head Varsity Boys' Basketball Coaching Position At Renaissance High School for the 2019-2020 School Year.**

77.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

78.     This claim is brought by Plaintiff Jordan against Defendants DPSCD and Dr. Vitti, Strougther and Wright, in their respective official and individual capacities, pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

79.     In accordance with the written settlement agreement reached in the Wayne County Circuit Court case, on September 10, 2019, Plaintiff Jordan formally applied in writing for the head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year.

80.     The head varsity boys' basketball coaching position was vacant because under the policy of the Defendant DPSCD, all coaching positions have to be posted and reapplied for each year.

81.     Additionally, the head varsity boys' basketball coaching position was vacant because under the written agreement the Defendants DPSCD, Strougther and Dr. Vitti entered into with John White for the 2018-2019 season, John White was only appointed on an interim basis to serve as the head varsity boys' basketball coach for Renaissance High School for the 2018-2019 school year only.

82.     On October 14, 2019, Jenice Mitchell Ford, general counsel for Defendant DPSCD, issued a written response to Plaintiff Jordan's formal written application applying for the head varsity boys' basketball coaching position at Renaissance High School.

83.     In her October 14, 2019 written response, Jenice Mitchell Ford advised Plaintiff Jordan and his legal counsel that the head varsity boys' basketball coaching position at Renaissance High School was not open and thus Plaintiff Jordan would not be considered for the position.

84.     Jenice Mitchell Ford's October 14, 2019 written response further advised Plaintiff Jordan and his legal counsel that Plaintiff Jordan that the Defendants Stroughter, Dr. Vitti, and DPSCD believed Plaintiff Jordan had mistakenly applied for the head varsity girls' basketball coaching position.

85.     In Plaintiff Jordan's September 2019 emails to Defendant Stroughter and Athletic Director Alexander, Plaintiff Jordan explicitly stated that he was formally applying for the head varsity boys' basketball coaching position at Renaissance High School.

86.     Defendants DPSCD, Strougher, Wright, and Dr. Vitti directed Jenice Mitchell Ford to send that written response to Plaintiff Jordan and his legal counsel.

87.     Defendant Strougher did not want to consider Plaintiff Jordan for the open head varsity boys' basketball coaching position at Renaissance High School because Plaintiff Jordan publicly criticized Defendant Strougher in the media while Plaintiff Jordan's Wayne County Circuit Court case was pending.

88.     Additionally, Defendant Strougher did not want to consider Plaintiff Jordan for the open head varsity boys' basketball coaching position at Renaissance High School because Plaintiff Jordan's Wayne County Circuit Court lawsuit properly alleged and pleaded that Defendant Strougher, who is married, was possibly having a sexual relationship and/or extra marital affair with Defendant Mark White.

89.     Defendants Wright and Dr. Vitti directed and instructed Defendant Strougher not to consider Plaintiff Jordan for the open head varsity boys' basketball coaching position at Renaissance High School.

90.     The tone of Jenice Mitchell Ford's October 14, 2019 email clearly illustrates the animus and ill will Defendants DPSCD, Dr. Vitti, Stroughter and Wright have toward Plaintiff Jordan.

91.     As a way to retaliate against Plaintiff Jordan for filing the meritorious Wayne County Circuit Court lawsuit and Plaintiff Jordan's scathing statements to the media about the Defendants Dr. Vitti, Stroughter, Wright and Mark White, Defendants DPSCD, Dr. Vitti, Stroughter, and Wright deliberately refused to consider Plaintiff Jordan for the open head boys' varsity basketball coaching position at Renaissance High School.

92.     Pursuant to the policy of the Defendant DPSCD, ALL coaching positions are open at the beginning of each school year and the coaches who served in a coaching capacity the previous year must reapply for the same position for the upcoming school year.

93.     Moreover, as noted, the coach who served as Renaissance High School's head varsity boys' basketball coach for the 2018-2019 school year was only appointed on an interim basis for the 2018-2019 school year.

94.     Additionally, as further evidence that the head varsity boys'
basketball coaching position at Renaissance High School was open
and vacant, the interim head varsity boys' basketball coach for the
2018-2019 school year, John White, was and still remains a member
of the administrative union, OSAS.  However, pursuant to the
Detroit Federation of Teachers' collective bargaining agreement,
OSAS union members are ineligible to be employed as coaches at
any school within the Defendant DPSCD.

95.     Coaching positions are covered by the Detroit Federation of
Teachers' collective bargaining agreement.

96.     Moreover, as a member of the Detroit Federation of Teachers,
Plaintiff Jordan has first preference/priority to any coaching
position at any school within the Defendant DPSCD.

97.     Therefore, contrary to the false statements made in Jenice
Mitchell Ford's response to Plaintiff Jordan's formal application,
the head varsity boys' basketball coaching position at Renaissance
High School was open for the 2019-2020 school year.

98.     The Defendants DPSCD, Stroughter, Dr. Vitti, and Wright's
refusal to consider Plaintiff Jordan for the open head varsity boys'

basketball coaching position was retaliation for Plaintiff Jordan filing the meritorious Wayne County Circuit Court lawsuit and for Plaintiff Jordan making critical statements to the media about Defendants DPSCD, Strougther, Dr. Vitti, Wright and Mark White.

**WHEREFORE**, Plaintiff Jordan requests this Court enters judgment against Defendants DPSCD, Strougther, Dr. Vitti, and Wright as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiff Jordan is found to be entitled;
b. an award of exemplary and punitive damages;
c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
d. a declaration that Defendants DPSCD, Dr. Vitti, Strougther, and Wright retaliated against Plaintiff Jordan for exercising his First Amendment rights by not considering Plaintiff Jordan for the open head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year; and
e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

### COUNT II

### Defendant Mark White Conspired With Defendants Dr. Vitti, Strougther, Wright To Retaliate Against Plaintiff Jordan For Exercising His First Amendment Rights.

99.     Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

100.    This claim is brought by Plaintiff Jordan against Defendant Mark White pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.* for conspiring with state actors to retaliate against Plaintiff Jordan for exercising his First Amendment rights.

101.    In June/July 2018, Defendant Mark White began having private discussions, meetings and conversations with Defendants Dr. Vitti, Stroughter, and Wright about becoming the head varsity boys' basketball coach at Renaissance High School.

102.    During those private conversations, Defendant Mark White provided Defendants Dr. Vitti and Wright with false and defamatory information about Plaintiff Jordan.

103.    In an effort to take the head varsity boys' basketball coaching position from Plaintiff Jordan, Defendant Mark White told Defendants Vitti and Wright that Plaintiff Jordan was not the right fit for the program and that Plaintiff Jordan was not the best coach.

104.    Defendant Mark White, who is an alumunus of Renaissance High School, continued his private discussions and meetings to become the head varsity boys' basketball coach at Renaissance with

Defendant Stroughter when she was officially appointed principal at Renaissance.

105. Defendants Mark White, Stroughter, Dr. Vitti, and Wright met privately to discuss how Defendant DPSCD could meet Defendant Mark White's salary demands and create a job for Defendant Mark White, in addition to his coaching duties.

106. Defendants Stroughter, Dr. Vitti, and Wright conspired by meeting and discussing privately to create a new position at Renaissance High School paying in excess of $70,000, that would include being the head varsity boys' basketball coach.

107. In his private meetings and conversations with Defendants Dr. Vitti, Stroughter, and Wright, Defendant Mark White advised them that he needed to be making just as much as he was making in the River Rouge School District.

108. Defendants DPSCD, Dr. Vitti, Stroughter and Wright agreed to Defendant Mark White's demands and agreed to create a dean of culture position for Defendant Mark White at Renaissance High School that would also include being the head varsity boys' basketball coach.

109.     Defendants Mark White and Stroughter then began trying to dig up dirt or any incriminating information on Plaintiff Jordan to justify removing Plaintiff Jordan as coach and replacing Plaintiff Jordan with Defendant Mark White.

110.     Defendant Mark White started reaching out to former players and their parents in an effort to did up dirt on Plaintiff Jordan.

111.     In an effort to keep his actions secret, Defendant Mark White did not share with officials from the River Rouge School District that Defendant Mark White was secretly meeting and talking with Defendants Dr. Vitti, Stroughter and Wright about becoming the next head varsity boys' basketball coach at Renaissance High School.

112.     In September 2018, Defendant Mark White began calling Plaintiff Jordan repeatedly and asking Plaintiff Jordan about the boys' basketball program.

113.     When it became public that Defendant Stroughter was removing Plaintiff Jordan as the head boys' basketball coach and replacing Plaintiff Jordan with Defendant Mark White, Plaintiff Jordan filed a civil lawsuit in the Wayne County Circuit Court.

114.    Plaintiff Jordan's Wayne County Circuit Court lawsuit properly alleged that Defendant Mark White was having a sexual relationship with Defendant Strougther.

115.    Plaintiff Jordan's Wayne County Circuit Court lawsuit also properly alleged that Plaintiff Jordan's termination was unlawful.

116.    The news media began writing articles critical of Defendants Dr. Vitti, Strougther and Mark White.

117.    After the allegations regarding Defendant Mark White were made public, Defendant Mark White began calling Plaintiff Jordan repeatedly and asking Plaintiff Jordan to ask his supporters and legal counsel to back off.

118.    Defendant Mark White was subsequently terminated from his employment with the River Rouge School District and Defendant Mark White subsequently withdrew his name from consideration for the head varsity boys' basketball coaching position at Renaissance High School.

119.    Upset that Plaintiff Jordan made public certain allegations pertaining to Defendants Mark White's and Strougther's alleged

extra marital affair, Defendant Mark White and Strouther vowed revenge against Plaintiff Jordan.

120. Defendant Mark White conspired with Defendants Strughter, Dr. Vitti and Wright not to bring back Plaintiff Jordan as the head varsity boys' basketball coach at Renaissance High School.

121. For the 2018-2019 season, Plaintiff Jordan's Renaissance High School boys' basketball team was the preseason favorite to win the Detroit Public School League Championship and the MHSAA State Championship.

122. For the 2018-2019 season, the Detroit News had Plaintiff Jordan's Renaissance High School boys' basketball team ranked as the preseason #1 ranked team in the state.

123. Defendant Mark White further conspired with Defendants DPSCD, Dr. Vitti, Strughter and Wright to have published a false allegation about Plaintiff Jordan involving one of Plaintiff Jordan's former players.

124. This false statement formed the basis of Plaintiff Jordan's defamation claim in his Wayne County Circuit Court case.

125.    Defendant Mark White met privately and conspired with Defendants DPSCD, Dr. Vitti, Stroughter and Wright to have false and defamatory allegations printed about Plaintiff Jordan.

126.    Defendant Mark White, like Defendants DPSCD, Dr. Vitti, Stroughter and Wright was seeking to get revenge and retaliate against Plaintiff Jordan for publicizing Defendant Mark White's alleged misconduct.

**WHEREFORE**, Plaintiff Jordan requests this Court enters judgment against Defendant Mark White as follows:

  a. compensatory damages in whatever amount above $75,000.00 Plaintiff Jordan is found to be entitled;
  b. an award of exemplary and punitive damages;
  c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
  d. a declaration that Defendant Mark White conspired with Defendants DPSCD, Dr. Vitti, Stroughter, and Wright to retaliate against Plaintiff Jordan for exercising his First Amendment rights; and
  e. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT III

**Defendants DPSCD, Dr. Vitti, Wright, Strougher Violated Plaintiff Jordan's Procedural Due Process Rights By Not Considering Plaintiff Jordan's Application For The Open Head Varsity Boys' Basketball Coaching Position At Renaissance High School.**

127. Plaintiff repeats, realleges and incorporates, the foregoing allegations, as though fully set forth and stated herein.

128. This claim is brought by Plaintiff Jordan against Defendant DPSCD, and Defendants Dr. Vitti, Strougher, Wright, in their respective official and individual capacities, pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

129. In accordance with the written settlement agreement reached in the Wayne County Circuit Court case, on September 10, 2019, Plaintiff Jordan formally applied in writing for the head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year.

130. The head varsity boys' basketball coaching position was vacant because under the policy of the Defendant DPSCD, all coaching positions have to be posted and reapplied for each year.

131.    Additionally, the head varsity boys' basketball coaching position was vacant because under the written agreement the Defendants DPSCD, Strougter and Dr. Vitti entered into with John White for the 2018-2019 season, John White was only appointed on an interim basis to serve as the head varsity boys' basketball coach for Renaissance High School for the 2018-2019 school year only.

132.    Additionally, as further evidence that the head varsity boys' basketball coaching position at Renaissance High School was open and vacant, the interim head varsity boys' basketball coach for the 2018-2019 school year, John White, was and still remains a member of the administrative union, OSAS.  However, pursuant to the Detroit Federation of Teachers' collective bargaining agreement, OSAS union members are ineligible to be employed as coaches at any school within the Defendant DPSCD.

133.    Coaching positions are covered by the Detroit Federation of Teachers' collective bargaining agreement.

134.    Moreover, as a member of the Detroit Federation of Teachers, Plaintiff Jordan has first preference/priority to any coaching position at any school within the Defendant DPSCD.

135.    Therefore, contrary to the false statements made in Jenice Mitchell Ford's response to Plaintiff Jordan's formal application, the head varsity boys' basketball coaching position at Renaissance High School was open for the 2019-2020 school year.

136.    On October 14, 2019, Jenice Mitchell Ford, general counsel for Defendant DPSCD, issued a written response to Plaintiff Jordan's formal written application applying for the head varsity boys' basketball coaching position at Renaissance High School.

137.    In her October 14, 2019 written response, Jenice Mitchell Ford advised Plaintiff Jordan and his legal counsel that the head varsity boys' basketball coaching position at Renaissance High School was not open and thus Plaintiff Jordan would not be considered for the position.

138.    Jenice Mitchell Ford's October 14, 2019 written response further advised Plaintiff Jordan and his legal counsel that Plaintiff Jordan that the Defendants Strougther, Dr. Vitti, and DPSCD

believed Plaintiff Jordan had mistakenly applied for the head varsity girls' basketball coaching position.

139.    In Plaintiff Jordan's September 2019 emails to Defendant Stroughter and Athletic Director Alexander, Plaintiff Jordan explicitly stated that he was formally applying for the head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year.

140.    Per the written settlement agreement reached in the Wayne County Circuit Court case, Plaintiff Jordan had a protected property interest in applying and interviewing for the open head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year.

141.    Defendants DPSCD, Dr. Vitti, Stroughter, and Wright denied Plaintiff Jordan of his protected property interest without due process.

142.    The actions of Defendants DPSCD, Dr. Vitti, Stroughter, and Wright denied Plaintiff Jordan his procedural due process rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

**WHEREFORE**, Plaintiff Jordan requests this Court enters judgment against Defendants DPSCD, Dr. Vitti, Stroughter, and Wright as follows:

a. compensatory damages in whatever amount above $75,000.00 Plaintiff Jordan is found to be entitled;
b. an award of exemplary and punitive damages;
c. an award of interest, costs and reasonable attorney fees under 42 USC §1988;
d. a declaration that Defendants DPSCD, Dr. Vitti, Stroughter, and Wright denied Plaintiff Jordan his procedural due process rights by refusing to consider his application for the open head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year; and
e. a declaration that the head varsity boys' basketball coaching position at Renaissance High School was open for the 2019-2020 school year when Plaintiff Jordan applied;
f. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: August 7, 2020            Respectfully submitted,

                                 */s/ ANDREW A. PATERSON*
                                 ANDREW A. PATERSON (P18690)
                                 Attorney for Plaintiff
                                 2893 E. Eisenhower Pkwy
                                 Ann Arbor, MI 48108
                                 (248) 568-9712
                                 aap43@outlook.com

**JURY DEMAND**

Plaintiff Venias Jordan, Jr., through counsel, respectfully demands

a jury trial on all issues triable to a jury.

Dated: August 7, 2020                   Respectfully submitted,

                                        */s/ ANDREW A. PATERSON*

                                        ANDREW A. PATERSON (P18690)

                                        Attorney for Plaintiff

                                        2893 E. Eisenhower Pkwy

                                        Ann Arbor, MI 48108

                                        (248) 568-9712

                                        aap43@outlook.com