UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENIAS JORDAN, JR.,

Plaintiff,

v.

VERYNDA STROUGHTER, ET AL.,

Defendants.

Case No. 20-cv-12126

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT WHITE'S MOTION TO DISMISS [#15], GRANTING THE DPSCD DEFENDANTS' MOTION TO DISMISS [#16],  FINDING DEFENDANT WHITE'S MOTION FOR A PROTECTIVE ORDER MOOT [#9], AND FINDING PLAINTIFF'S EMERGENCY MOTION FOR EXTENSION OF TIME TO FILE A RESPONSE MOOT [#23]**

## I. INTRODUCTION

On August 7, 2020, Plaintiff Venias Jordan, Jr. ("Plaintiff") initiated this action against Defendant Mark White ("White") and Defendants Verynda Stroughter, Nikolai Vitti, Iranetta Wright, and the Detroit Public Schools Community District ("DPSCD") (collectively, "the DPSCD Defendants"). *See* ECF No. 1.  Plaintiff filed an Amended Complaint on September 23, 2020 that alleges five counts against Defendants, including retaliation in violation of the First Amendment and tortious interference in violation of state law. *See* ECF No. 12.

1

Presently before the Court is Defendant White's Motion to Dismiss, filed on October 7, 2020.[1]  ECF No. 15.  The matter is fully briefed.  ECF Nos. 18, 21.  Also before the Court is the DPSCD Defendants' Motion to Dismiss, filed on October 14, 2020.  ECF No. 16.  Plaintiff filed a Response on November 4, 2020.  ECF No. 20.  No Reply was filed.  Additionally, the Court notes that the DPSCD Defendants initially filed a dismissal motion on September 2, 2020.  In response, however, Plaintiff timely filed his Amended Complaint within twenty-one days in accordance with Federal Rule of Civil Procedure 15.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Defendant's first dismissal motion is thus MOOT.

A hearing on these matters was held on January 21, 2021.  For the reasons that follow, the Court will GRANT IN PART AND DENY WITHOUT PREJUDICE IN PART Defendant White's Motion to Dismiss [#15] and GRANT the DPSCD Defendants' Motion to Dismiss [#16].  Because this Order will dismiss the case in its entirety, the Court finds that Defendant White's Motion for a Protective Order [#9] and Plaintiff's Emergency Motion for Extension of Time to File a Response [#23] are MOOT.

---

[1] It is unclear why Defendant White labeled his Motion as a Second Motion to Dismiss, since he had not previously filed a dismissal motion in this case.  The Court will thus construe his Motion as a traditional dismissal motion, which is properly before the Court.

## II. BACKGROUND

In 2013, Plaintiff Venias Jordan, Jr. began serving as the head coach of the Detroit Renaissance High School ("Renaissance") boys' basketball team.  ECF No. 12, PageID.170.  Plaintiff is a member of the Detroit Federation of Teachers.  *Id.* at PageID.190.  The hiring process for coaching positions is governed by the Detroit Federation of Teachers' Collective Bargaining Agreement.  *See* ECF No. 16-4, PageID.345.  Specifically, "[a]ll coaches, assistant coaches, and other coaching personnel must be approved annually by the high school principal," signifying that Renaissance's principal has total discretion to fill coaching positions on a yearly contractual basis.  *Id.* at PageID.345.

Anita Williams, who is not a party in this matter, was the principal at Renaissance when Plaintiff started his position in 2013.  *Id.*  Plaintiff claims he had a binding oral contract with Principal Williams that named him as coach of the basketball team, and that each year since 2013, Williams orally renewed this contract.  *Id.* at PageID.171.  According to Plaintiff, this occurred most recently in June 2018 for the 2018-2019 school year.  *Id.* at PageID.171-172.

This Court summarized the events that followed in its October 23, 2018 Order in a companion case involving the same parties and underlying dispute:

> In July 2018, Anita Williams resigned from her position as Principal, and Roy Harris filled the role as interim Principal.  In August 2018, Plaintiff claims that interim Principal Harris verbally reaffirmed that Plaintiff would remain the head coach for the upcoming 2018-2019 season.

On September 4, 2018, Defendant Verynda Stroughter took over as Principal at Detroit Renaissance High School.  After being hired, Defendant Stroughter decided to relieve Plaintiff of his duties as head boys' basketball coach.  This took place on September 11, 2018.  Defendant Stroughter maintains that she made this decision, in part, because she had learned of some inappropriate behavior by Plaintiff.  Plaintiff contends he was released from his position so Defendant Stroughter could hire her alleged romantic partner and former Detroit Renaissance High School basketball coach, Mark White.  In any case, Defendant Stroughter conducted interviews for the open position and allowed Plaintiff to reapply.

Plaintiff scheduled an interview with Defendant Stroughter for September 24, 2018.  However, in the days leading up to the interview, Plaintiff asserts that Mark White contacted him to let him know that Defendant Stroughter had already offered White the job.  Upon learning this, Plaintiff retained an attorney.  When Plaintiff arrived for his interview with Defendant Stroughter, Plaintiff brought an email from his attorney threatening litigation.  Plaintiff claims that during the interview, Defendant Stroughter seemed disinterested in rehiring Plaintiff as head coach.  Hence, following the interview, Plaintiff contacted his attorney and members of the media to publicly criticize Defendant Stroughter.  On September 25, 2018, Detroit News released an article detailing Plaintiff's comments.

Notably, Mark White was never hired as head coach at Detroit Renaissance High School.  He withdrew from consideration after allegations surfaced about him having sexual relationships with female high school students.  Instead, John White was selected to serve as interim head coach on October 1, 2018.

*Jordan v. Stroughter*, No. 18-CV-13024, 2018 WL 5262681, at *1–2 (E.D. Mich.

Oct. 23, 2018) (Drain, J.) (docket citations omitted).

Plaintiff voluntarily dismissed his prior case before this Court in November

2018 and pursued his claims in state court against all Defendants except Defendant

White.  On August 14, 2019, the parties executed a Settlement Agreement and

Release of Claims ("Settlement Agreement") and dismissed both the pending

lawsuits and demand for arbitration.  ECF No. 16-5, PageID.348.  Plaintiff received

a confidential sum per the terms of the Settlement Agreement.  *Id.* at PageID.347.

Additionally, the Settlement Agreement permitted Plaintiff to apply for a coaching

assignment with the DPSCD Defendants.  *Id.* at PageID.347.  In accordance with

this provision, Plaintiff formally applied for the boys' basketball coaching position

for the 2019-2020 season.  ECF No. 12, PageID.185.  Shortly thereafter, Defendants

advised Plaintiff that he would not be considered for the position.  *Id.* at PageID.186.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an

assessment as to whether the plaintiff has stated a claim upon which relief may be

granted.  *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss pursuant to

Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal

Rule of Civil Procedure 8(a)(2).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the

pleader is entitled to relief, in order to give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *Conley*

*v. Gibson*, 355 U.S. 41, 47 (1957)).  To meet this standard, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face."  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying

the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). While courts are required to accept the factual allegations in a complaint as true, *Twombly,* 550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions, *see Iqbal,* 556 U.S. at 678. Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted).

## III. DISCUSSION

Plaintiff brings five claims in his Amended Complaint: First Amendment retaliation by the DPSCD Defendants (Count I); conspiracy to First Amendment retaliation by Defendant White (Count II); deprivation of procedural due process in violation of the Fourteenth Amendment by the DPSCD Defendants (Count III); tortious interference with a business expectancy by Defendant White (Count IV); and tortious interference with an existing contractual relationship by Defendant White (Count V). The Court will address each in turn.

## A. Retaliation (Count I)

Plaintiff's first claim alleges that the DPSCD Defendants deliberately failed to consider him for the 2019-2020 coaching position as retaliation for his engagement in constitutionally protected conduct—making statements to the press and filing a civil lawsuit. Defendants deny that the rejection of his application was causally connected to Plaintiff's conduct. Defendants further assert that Plaintiff, as a public employee, was speaking about a personnel decision he disagreed with and not a matter of public concern, thus foreclosing his First Amendment claim.

To survive dismissal of a First Amendment retaliation claim, a plaintiff must generally show that "(1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). Public employees, however, must make an additional showing to demonstrate their speech is protected under the First Amendment. Specifically, the Sixth Circuit has reiterated that there are long-imposed "threshold requirements that the employee (1) must have spoken 'as a citizen,' and (2) must have 'address[ed] matters of public concern." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007) (quoting *McMurphy v. City of Flushing*, 802 F.2d 191, 197 (6th Cir. 1986)). If these two elements are met, the plaintiff must also demonstrate that his

7

"interest in making such statements outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003).

Consequently, if an individual speaks "as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983).  Thus, "[u]nderlying [these] cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (quoting *Connick*, 461 U.S. at 154).

As to the first threshold requirement, it is evident that Plaintiff's filing of a civil lawsuit and speaking to the press were not activities undertaken pursuant to his official duties as an employee of either Renaissance or the Detroit Federation of Teachers.  Precedent cautions that an individual speaks as an employee, and not a citizen, only when the contested speech is part of "conducting his daily professional activities." *Garcetti*, 547 U.S. at 422.  Here, however, Plaintiff's conduct was not related to the official duties of his position as an employee of Renaissance; instead, he felt aggrieved by Defendants' hiring decisions and sought to rectify the situation by filing a lawsuit and speaking to the press.  Plaintiff therefore spoke as a citizen

when he engaged in the behavior in question, and not as an employee conducting official business.

The second threshold question concerns whether Plaintiff's conduct addressed a matter of public concern. This includes speech "relating to 'any matter of political, social, or other concern to the community.'" *Banks*, 330 F.3d at 893 (quoting *Connick*, 461 U.S. at 146). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement[.]" *Id.* Generally, however, "speech involves matters of public concern when it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Id.* (internal quotations and citations omitted).

In this case, the context of Plaintiff's speech is critical in determining whether it addresses a matter of public concern. The Court will discuss the filing of Plaintiff's lawsuit first. It is undisputed that after Plaintiff's coaching contract had been orally renewed for multiple years, Defendant Stroughter made the decision not to hire Plaintiff for the 2018-2019 season. Plaintiff, believing that the coaching position was improperly denied to him, raised his claims in a civil lawsuit. This conduct—turning to the courts to raise allegations of wrongdoing in a hiring decision—does not reach the level of public concern required to sustain a First Amendment claim. In comparison, the Sixth Circuit has found that other matters,

such as the improper payment of unqualified employees or mishandling of school budgets, does fall within the sphere of public concern because it "enable[s] the members of society to make informed decisions about the operation of their government." *Banks*, 330 F.3d at 893.

The filing of Plaintiff's lawsuit, however, presents facts more consistent with an internal employee grievance. The speech here "relates primarily to a matter of 'limited public interest' and does not 'seek to bring to light actual or potential wrongdoing or breach of public trust,' centering instead on matters primarily . . . 'of personal interest' to the employee." *Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989) (quoting *Jurgensen v. Fairfax Cty.*, 745 F.2d 868, 879 (4th Cir. 1984)). In weighing this fact in the overall analysis, the Court is not persuaded that the civil lawsuit involved a matter of true public concern. *Id.*

But while Plaintiff's act of filing a civil lawsuit in this case does not sufficiently address a matter of public concern, Plaintiff's statements to the press presents a slightly different question in the public concern inquiry. The statements Plaintiff made to the media include allegations of an extramarital affair and sexual relationships with underaged students, which Defendants characterize as unfounded "rumors, speculation, and innuendo." ECF No. 16, PageID.283. Defendants go on to argue that, while speech concerning inappropriate sexual relationships with minors could be categorized as protected speech, this is not true "when it is only

used as a self-serving tool by a [p]laintiff to seek attention to his very personal lawsuit." *Id.* at PageID.284.

Given the facts available, the Court finds that Plaintiff is correct in asserting that an individual's purported sexual misconduct with underage students is a matter of public concern. Contrary to the filing of his civil lawsuit, Plaintiff's speech to the media can be perceived as "seek[ing] to bring to light actual or potential wrongdoing or breach of public trust[,]" notwithstanding his coinciding personal motivations for doing so. *Brown*, 867 F.2d at 322. The Court thus proceeds to the remaining discussion in the First Amendment retaliation analysis on the sole issue of Plaintiff's statements to the press. *See Garcetti*, 547 U.S. at 418 (explaining that if a district court declines to hold that certain speech was not of public concern, such as the filing of Plaintiff's civil lawsuit, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.").

When a court finds that a public employee has spoken as a citizen on a matter of public concern, "the possibility of a First Amendment claim arises." *Garcetti*, 547 U.S. at 418. The question then becomes "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions

it imposes must be directed at speech that has some potential to affect the entity's operations.").

Here, again, the context of Plaintiff's statements to the media are critical. The day of his termination, Plaintiff—via his attorney—contacted various governmental officials and the press to request a criminal investigation into Defendant White. *See* ECF No. 12, PageID.181. This happened concurrent to the conclusion of Plaintiff's interview process for the 2018-2019 position and his discovery that his contract would not be renewed by Defendant Stroughter. *Id.* In fact, according to his Amended Complaint, Defendant Stroughter informed Plaintiff that she would be proceeding with a different candidate for the coaching position *prior* to Plaintiff's discussions with the media. *See id.* at PageID.175, 181-182 (highlighting that the initial conversation between Defendant Stroughter and Plaintiff occurred on September 11, 2018, while Plaintiff publicly spoke to the media after September 25, 2018).

It is important to note, however, that the disputes around the 2018 events were previously litigated, and resolved via settlement, on August 14, 2019. Plaintiff's claims are now narrowly directed towards the hiring process for the 2019-2020 season, alleging that his prior speech to the media in 2018 has fueled Defendants' desire to deny him a coaching position now. But the facts do not support Plaintiff's contentions; instead, it is clear that Defendants declined to hire him in 2018, and

again in 2019, because Defendant Strougter—who maintained absolute discretion in hiring decisions—simply decided not to proceed with Plaintiff Jordan as head coach. According to the Amended Complaint, her decision not to hire Plaintiff was explicitly communicated to him on September 11, 2018—before his engagement with the media. Notably, Plaintiff has not plead relevant facts to suggest that Defendants' motivation for not hiring him changed from 2018 to 2019 because of his public conduct.

While the subsequent Settlement Agreement allowed Plaintiff to apply for the position, there was never a requirement that Defendant Strougter hire him back, and Defendants' declination of Plaintiff's application by itself does not amount to a viable First Amendment claim. Further, the Court is cognizant of Defendants' competing interest in "respect[ing] the needs of government employers attempting to perform their important public functions," which is hindered by the inflammatory allegations about the school and its employees made by Plaintiff to the press. *Garcetti*, 547 U.S. at 420, 423. Defendants, therefore, are not required to "tolerate action which [they] reasonably believed would disrupt the office, undermine [their] authority, and destroy close working relationships[.]" *Brown*, 867 F.2d at 323 (quoting *Connick*, 461 U.S. at 154).

Thus, while the content of Plaintiff's speech to the media was of some public concern, the Court is not persuaded that the speech derived from anything more than

vehement disagreement over a personnel decision that was perceived to be unfair in both substance and form.  Moreover, the Supreme Court emphasized in *Connick* that even when "the government employer's dismissal of the worker may not be fair, . . . ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Connick*, 461 U.S. at 146–47 (1983) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)) (additional citations omitted).  Upon consideration of the facts in this matter, the Court finds that Plaintiff's conduct does not sufficiently meet the level of protected speech and fits more squarely into an attempt to 'constitutionalize [an] employee grievance.'" *Garcetti v. Ceballos*, 547 at 420.  As in *Brown*, Plaintiff's engagement with the press appears motivated and "center[ed] instead on matters primarily . . . of personal interest to the employee[,]" including Defendants' denial of Plaintiff's former coaching job and Plaintiff's desire to return to the position.  *Brown*, 867 F.2d at 322. This is insufficient to meet the requirements for a First Amendment retaliation claim by a public employee.  The Court will thus dismiss Plaintiff's Count I.[2]

---

[2] Because the Court has found that Plaintiff's First Amendment claim is not substantively viable, the Court will decline to analyze whether Plaintiff was required to first administratively exhaust his grievance in accordance with the Detroit Federation of Teachers' Collective Bargaining Agreement.  Further, even if the Court were to conclude that exhaustion was mandatory, Plaintiff's Count I would still fail on the underlying merits of his claim.

### B. Conspiracy (Count II)

Plaintiff's second count alleges that Defendant White conspired with the DPSCD Defendants to retaliate against him and "prevent Plaintiff from being brought back as the head varsity boys' basketball coach." ECF No. 18, PageID.373. This Court, however, has already dismissed Count I of Plaintiff's Amended Complaint, which alleges retaliation in violation of the First Amendment.

The Sixth Circuit has repeatedly held that a failure to establish an underlying constitutional violation will doom a conspiracy claim based on that same right. *See Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (holding that the plaintiff "cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her."); *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007) ("Absent any constitutional deprivation, [the plaintiff] cannot establish a case of conspiracy against Defendants–Appellees."). Further, Plaintiff has not shown that the DPSCD Defendants retaliated against him by declining to offer him the 2019-2020 season coaching position, nor has Plaintiff demonstrated that Defendant White participated in the school's hiring decision beyond behaving as an applicant for the open position.

Accordingly, Plaintiff's claim that Defendant White conspired to violate Plaintiff's First Amendment rights must fail. The Court will thus dismiss Count II of Plaintiff's Amended Complaint.

## C. Procedural Due Process (Count III)

Count III of Plaintiff's Amended Complaint alleges that the DPSCD Defendants denied Plaintiff's procedural due process rights by depriving him of the right to apply for the head coaching position.  Plaintiff specifically alleges that the Settlement Agreement created "the protected property interest for Plaintiff to apply for the open varsity head boys' basketball coaching position at Renaissance High School for the 2019-2020 school year."  ECF No. 20, PageID.402.  Defendants dispute Plaintiff's characterization of the Settlement Agreement as creating a protected property interest in applying for the position.  Defendants further argue that, because the hiring decision is ultimately discretionary, Plaintiff cannot maintain a procedural due process claim.

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  A property interest may "be created by a state statute, a formal contract, or a contract implied from the circumstances," which can include a collective bargaining agreement or a settlement agreement in a pending lawsuit. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587 (6th Cir. 2004).  The Sixth Circuit

emphasizes, however, that "[n]o constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary." *McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006).

Here, Plaintiff does not have a protected property interest created by the Settlement Agreement.   The explicit language contained in the Settlement Agreement states:

> **4. Jordan's Ability To Apply For Coaching Assignment With DPSCD.** DPSCD agrees, as it has at all times relevant to the matters subject to the Lawsuits and Arbitration, that Venias Jordan, Jr. may apply for a coaching assignment with DPSCD ("Ability To Apply For Coaching Assignment").

ECF No. 16-5, PageID.348.  First, it is important to note that Defendants state, and Plaintiff explicitly confirms, that Plaintiff "formally applied in writing for the head varsity boys' basketball coaching position at Renaissance High School for the 2019-2020 school year."  ECF No. 12, PageID.201.  Under the plain language of the Settlement Agreement, Defendants were required only to allow him to apply; contrary to his arguments, Plaintiff was not expressly guaranteed the right to be considered, interviewed, or offered the coaching position.  Thus, Plaintiff has not demonstrated that he has "a legitimate claim of entitlement" to return to his former position, and his unilateral expectation of the job is insufficient to state his due process claim.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an

abstract need or desire for it."). Any additional disputes about the significance of the word "apply" within the Settlement Agreement entails a question of contractual, not constitutional, interpretation in this matter.

Further, Plaintiff emphasizes that his lawsuit "does not seek to vindicate any rights afforded [to] him under the Detroit Federation of Teacher[s'] collective bargaining agreement." ECF No. 12, PageID.204. The Collective Bargaining Agreement, however, specifies that "[a]ll coaches, assistant coaches, and other coaching personnel must be approved annually by the high school principal[.]" ECF No.16-4, PageID.345. In other words, Defendant Stroughter, in her capacity as principal of Renaissance, has absolute discretion to approve all coaching personnel determinations.

This is in contrast to a Sixth Circuit case cited by Plaintiff, which states that the plaintiff's collective bargaining agreement "explicitly agreed to discharge its employees only for just cause." *Singfield*, 389 F.3d at 566 ("This agreement vests in [plaintiff] the necessary property interest in continued employment."). Unlike the plaintiff in *Singfield*, Plaintiff's application for the 2019-2020 season was subject to the wholly discretionary power of Defendant Stroughter as detailed in the Collective Bargaining Agreement. *See id.*; *see also McClain*, 440 F.3d at 330. Consequently, Plaintiff has failed to state a viable procedural due process claim because he cannot demonstrate that he has a protected property interest stemming from the Settlement

Agreement and his application process.  The Court will accordingly dismiss Count III of Plaintiff's Amended Complaint.

### D. Tortious Interference Claims (Count IV & V)

Finally, Plaintiff's Amended Complaint includes two state claims: (1) tortious interference with a business expectancy (Count IV) and (2) tortious interference with a contractual relationship (Count V).  *See* ECF No. 12.  The Court declines supplemental jurisdiction over these remaining claims against Defendants pursuant to 28 U.S.C. § 1367(c)(3) and accordingly dismisses these claims without prejudice.

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."  *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1995) (internal citation omitted); *see also City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 173 (1997) (explaining that under the supplemental jurisdiction statute, federal courts decide whether to exercise supplemental jurisdiction "at every stage of the litigation").  If the federal claims are dismissed before trial, even though the claims are not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  The Sixth Circuit has determined that when all federal claims are dismissed before trial, the "balance of considerations" typically points to dismissing the state law claims or remanding them to state court.  *See id.*; *Musson Theatrical*, 89 F.3d at 1254–55; *Perry v. Se. Boll Weevil Eradication Found.,* 154 F.

App'x. 467, 478 (6th Cir. 2005) (noting that dismissal is the "clear rule of this circuit") (internal citations omitted).

"In determining whether to exercise supplemental jurisdiction, federal courts balance the values of judicial economy, convenience to parties, fairness, and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (internal citations omitted). Here, the relevant factors weigh in favor of dismissing Plaintiff's remaining state claims. Pursuant to the Court's findings as to Plaintiff's retaliation, conspiracy, and procedural due process claims, no federal subject-matter jurisdiction remains. The state court is well-equipped to try the remaining state law claims.

Accordingly, after balancing the interests, the Court declines supplemental jurisdiction over Counts IV and V and will dismiss these remaining claims without prejudice. Defendant's Motion as it relates to Counts IV and V will thus be denied without prejudice.

## IV. CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART** Defendant White's Motion to Dismiss [#15] and **GRANTS** the DPSCD Defendants' Motion to Dismiss [#16]. Count IV and V of Plaintiff's Amended Complaint are **DISMISSED WITHOUT PREJUDICE**. Because this Order dismisses Plaintiff's case in its entirety, the Court

finds that Defendant White's Motion for a Protective Order [#9] and Plaintiff's Emergency Motion for Extension of Time to File a Response [#23] are **MOOT**.

**IT IS SO ORDERED.**


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  February 17, 2021


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 17, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

21